IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| STEVE LEDLOW, Jr., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:10-cv-01178-IPJ-TMP |
| ) | |
| STANTHONY GIVENS, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff, Steve Ledlow, Jr., an inmate in the Alabama penal system, filed this pro se action alleging that his constitutional rights have been violated during his incarceration in the Donaldson Correctional Facility in Bessemer, Alabama. Named as the only defendant in the complaint is Correctional Officer Stanthony Givens. The plaintiff seeks compensatory and punitive damages for alleged excessive force.

## CASE HISTORY

On August 3, 2010, a magistrate judge entered an Order for Special Report directing that copies of the complaint be forwarded to the defendant and requesting that he file a special report addressing the factual allegations therein. The defendant was advised that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, would be considered as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.

On October 18, 2010, the defendant filed a special report accompanied by his affidavit and copies of certain inmate records contained in the plaintiff's file at the Donaldson Correctional

Facility. (Doc. #10).  The plaintiff submitted affidavits and other pleadings in response to the defendant's special report. (Doc's. #12, #13, #14, #15 and #16).

On July 14, 2011, the parties were advised that the defendant's special report would be construed as a motion for summary judgment and the plaintiff was notified that he would have twenty days to respond to the motion by filing affidavits or other material if he chose.  The plaintiff was advised of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).  The plaintiff filed a response to defendants' motion for summary judgment on August 9, 2010. (Doc. #22).[1]  This matter is now before the court on the defendant's special report (Doc. #10) being construed as a motion for summary judgment, and the plaintiff's responses thereto. (Doc's. #12, #13, #14, #15, #16 and #22).

## SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law.  Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56.  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).  Once that initial burden has been carried, however, the non-moving party may not

---

[1] On August 15, 2011, the plaintiff submitted a "Request for Admissions." (Doc. #23). However, the Order for Special Report expressly forbids the service of any Rule 36 requests for admissions without prior express written approval from the court, which said approval was not sought or granted in this instance.

merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (citation omitted).

<u>PLAINTIFF'S FACTUAL ALLEGATIONS</u>

The plaintiff alleges he was subjected to excessive force by the defendant, Officer Stanthony Givens, at the Donaldson Correctional Facility on February 16, 2010. (Doc. #1). The plaintiff had been engaged that morning in an ongoing verbal confrontation with another inmate, Reginald Coleman, in the G-block segregation unit, and their threats and shouts of profanity were loud enough to have been heard by the officers in the cubicle. *Id.* at 3. At approximately 9:45 a.m., the defendant appeared at the plaintiff's cell in order to escort him to the infirmary, and while en route the

defendant notified the plaintiff that he had in fact heard the argument and threatened to "take [his] head off if [he] was to even fart loud."[2] *Id.* at 3.

The complaint is not clear if both the plaintiff and Coleman were being escorted by the defendant to the infirmary, but they ended up in the infirmary at the same time, where the plaintiff alleges that the defendant re-handcuffed Coleman behind his back, but left the cuffs loose enough to allow escape.[3] (Doc. #1, p. 4).  Although nothing happened during the infirmary visit, as the plaintiff and Coleman were being escorted back to the segregation unit by the defendant, Coleman began to run toward the shower area where he allegedly had hidden a knife. *Id*.  At that point, the plaintiff admits that he slipped out of his handcuffs and began chasing Coleman to prevent him from obtaining the weapon, which prompted the defendant to intervene. *Id*.  The plaintiff states that the defendant charged at him and stabbed him in the face with a pocket knife, then knocked him unconscious with a baton. *Id*.  As the plaintiff laid on the ground "barely conscious," Coleman allegedly started kicking him while the defendant did nothing to intervene until the arrival of another officer. *Id*.  While being taken back to the infirmary for treatment of his injuries, the plaintiff was allegedly choked and pushed to the ground by an un-named officer, and the defendant is alleged to have repeatedly slapped the plaintiff with an open hand and to have threatened him with further harm if he reported the incident. *Id*.   While in the infirmary, the plaintiff claims that he overheard the defendant and a supervisor "rehearsing a false alibi to cover-up [the defendant's] foul actions." *Id*.

---

[2]  The plaintiff quotes the defendant as saying: "I heard you and Coleman earlier [and] I pray that I don't have to use my knife today, because if I do, someone's gonna be sorry they woke up this morning." (Doc. #1, p. 5).

[3]  The plaintiff states that he became scared at seeing the loosened handcuffs because he had previously overheard Coleman threaten to pay off an officer to allow Coleman to stab him. (Doc. #1, p. 4).  However, in his argument in response to the defendant's special report, the plaintiff states that Coleman remained handcuffed during the incident. (Doc. #22, p. 6).

DEFENDANT'S SPECIAL REPORT

The defendant testifies that the plaintiff was attempting to assault inmate Coleman with a weapon and refused an order to stop, mandating the use of force.[4] (Doc. #10-2).  He denies using a pocket knife, but states that he inadvertently struck the plaintiff in the face with a baton in an attempt to prevent the plaintiff's attack on Coleman. *Id*. at 1-2.  He also denies having failed to intervene while the plaintiff was choked and pushed to the ground and denies having slapped the plaintiff while he was on the ground. *Id*. at 2.

Submitted with the defendant's special report are copies of certain Donaldson Correctional Facility records in connection with the events of February 16, 2010, including an incident report prepared by the defendant which states that the plaintiff failed to obey a direct order to stop after he had escaped from his handcuffs and was attempting to assault Coleman. (Doc. #10-3, pp. 2-3).  The report also indicates that within minutes of the event the plaintiff was taken to the infirmary for treatment of his wounds and that the incident was immediately reported to three supervisory officers. *Id*. at 2.  The Body Chart prepared by the infirmary nurse indicates that the plaintiff suffered a bloody nose and a 2cm laceration on his right cheek, which was closed with six stitches. *Id*. at p. 4.

The Donaldson records also show that a disciplinary hearing was held on February 21, 2010, with regard to the charge that the plaintiff had failed to obey the defendant's a direct order to cease his aggressive action toward Coleman. (Doc. #10-3, pp. 6-9).  The hearing officer found the plaintiff guilty and sentenced him to thirty days disciplinary segregation and loss of store, phone and

---

[4] The Incident Report prepared by the defendant indicates that the plaintiff used a "handcuff key" to unlock and break free from his handcuffs. (Doc. #10-3, p. 2).  However, neither the defendant's affidavit nor the incident report identifies the actual weapon in the plaintiff's possession, other than the handcuff key.  In any event, the unattached handcuff could be used as a weapon.

visitation privileges. *Id*. at 8.  The hearing officer's findings were approved by the Warden on February 24, 2010. *Id*. at 8.

## PLAINTIFF'S RESPONSE

In response to the defendant's special report, the plaintiff testifies that he did not have a weapon at the time and that the defendant's order to "stop" was not directed specifically at him, but could have been meant for Coleman, who was "making an urgent move" toward the shower to retrieve a weapon.[5] (Doc. #22-1).  The plaintiff reiterates his contention that the defendant stabbed him in the face with a pocket knife and alleges the defendant then pulled a baton and struck him repeatedly.[6]  *Id*. at 1-2; *see also* Doc. #14, page 3.  He further testifies that he was choked and repeatedly slapped after he was restrained,[7] and surmises that the defendant intentionally brought him and Coleman together "in anticipation" that he (the defendant) would be given an opportunity to use physical force.[8] *Id*. at 1-2.

---

[5]  However, the plaintiff admits that he slipped out of his own handcuffs and ran after Coleman in order to prevent him from retrieving a weapon. (Doc. #14, p. 2).  It is therefore not reasonable for the plaintiff to infer that the defendant's order to stop was not also directed towards him.

[6]  In support of this contention, the plaintiff submits the affidavit of inmate Shawn Abney, who testifies that the defendant approached the plaintiff from behind and stabbed him in the face, after which he knocked the plaintiff to the ground "motionless." (Doc. #22, p. 19).  However, Abney concedes that these events occurred as the result of a "stand off" between the plaintiff and Coleman. *Id*.

[7]  In that regard, the plaintiff submits the affidavit of inmate Willie Ricks, who states that he saw the defendant slap, punch and kick the plaintiff while he was handcuffed and being led out of the cellblock. (Doc. #14, p. 4).

[8]  Notwithstanding the defendant's alleged threat to use force if the plaintiff misbehaved on the way to the infirmary, or the alleged loosening of Coleman's handcuffs at the infirmary, this allegation is pure speculation and is unsupported by any evidence.

DISCUSSION

Maintaining institutional security and preserving internal order and discipline are essential goals of a prison administration and may require limitation or retraction of the constitutional rights of prisoners. *Bell v. Wolfish*, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 47 (1979).  Prison officials must therefore be free to take appropriate action to insure the safety of inmates and staff and the courts will not normally second-guess prison officials on matters involving internal security. *Wilson v. Blankenship*, 163 F.3d 1284 (11th Cir. 1998).  When disciplinary action is taken by a prison official to prevent a security threat or to restore official control, the court's Eighth Amendment inquiry focuses on whether force was applied in a good faith effort to maintain or restore discipline or was undertaken maliciously or sadistically to cause harm. *Sims v. Mashburn*, 25 F.3d 980 (11th Cir. 1994).  With respect to incarcerated individuals, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the constitution. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  The factors to be examined in determining whether the use of force was wanton and unnecessary include an evaluation of: 1) the need for the application of the force, 2) the relationship between that need and the amount of force used, 3) the threat reasonably perceived by the responsible officials and 4) any efforts made to temper the severity of the response. *Hudson v. McMillian*, 503 U.S.1, 7 (1992).

In dealing with excessive force issues, our courts have recognized that prisons are harsh places that present the "ever-present potential for violent confrontation and conflagration." *Whitley*, 475 U.S. at 321; *quoting Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 132 (1977).  In the face of these conditions, prison officials are charged with the "unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennen*, 511 U.S. 825, 845 (1994). Therefore, in recognition of the hard choices faced by prison officials in the day-to-

day operation of penal institutions, our courts are obliged to apply an "appropriate hesitancy" in second guessing those officials who are quite often faced with decisions that are, of necessity, made "in haste, under pressure and frequently without the luxury of a second chance." *Whitley*, 475 U.S. at 321.

The defendant in this instance was faced with just such a situation. It is undisputed that the plaintiff had escaped from his handcuffs, had ignored a command to stop, and was on the brink of engaging in a potentially violent confrontation with another inmate; one whom the plaintiff concedes was attempting to obtain a weapon from the shower area.[9] At that point, the defendant was faced with a situation that easily could have escalated into a serious safety and security problem for himself, the staff, and other prisoners, and one which clearly required an immediate and forceful response. Where, as here, the potential for violence "ripens into *actual* unrest and conflict, the admonition that 'a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators' carries special weight." *Whitley*, 475 U.S. at 321.

Although the alleged use of a pocketknife by the defendant admittedly seems unorthodox in the context of prison security, this court must give "wide ranging" deference to the judgment of prison officials in their response to an actual confrontation between inmates. *Whitley*, 475 U.S. at 322. As stated by the Supreme Court in *Whitley*,

> "The infliction of pain in the course of a prison security measure does not amount to cruel and unusual punishment simply because it may appear *in retrospect* that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." (emphasis added).

---

[9] As indicated earlier, he plaintiff's own evidence shows that he was engaged in a "stand off" with inmate Coleman. (Doc. #22, p. 19).

475 U.S. at 319.   Therefore, where there is no evidence that an action was taken in bad faith or without a legitimate purpose, "neither judge nor jury should freely substitute their judgment for that of officials who have made a considered choice." *Id*. at 322.  This seems especially true in light of the situation the defendant faced, which happened without warning, was potentially life threatening, and required quick and decisive action to prevent a more serious occurrence.  It seems clear that where the defendant's use of a pocketknife was simply "part and parcel of a good-faith effort to restore prison security," there is no Eighth Amendment violation.  *Id*. at 326.  Although the plaintiff's injuries are unfortunate, he has failed to present evidence which "goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives." *Id*. at 323.  Without more, his claims cannot proceed past summary judgment.

The undisputed evidence also shows that the defendant took immediate efforts to temper the severity of his response. The Eleventh Circuit has explained recently that this *Hudson* factor is concerned not with limitations or restraints on the force used, but with efforts *after* the force is applied to provide treatment or care for injuries.  *Fennell v Gilstrap* 559 F.3d 1212, 1219-20 (11th Cir. 2009).  In this instance, it is undisputed that the plaintiff was taken immediately to the prison infirmary by the defendant, where his wounds were promptly treated.

Plaintiff also seems to allege that, after he was knocked down by defendant, he was kicked by inmate Coleman, which the defendant did nothing to prevent.  Although it is not clear whether plaintiff is arguing that defendant's failure to protect him from Coleman is an independent constitutional violation, it is clear that defendant's conduct in awaiting assistance from another corrections officer was not done in bad faith.  Rather, the undisputed facts show that defendant was faced with two inmates attempting to attack each other, being potentially armed with at least lose-hanging handcuffs.  He took immediate steps to stop the attack, but waited for another guard to help

him gain control of the situation. It was reasonable for defendant to await assistance before attempting to control two inmates. There was no actionable failure to protect.

In addition to the force that was applied to quell the disturbance, the plaintiff also alleges that he was slapped by the defendant after he had been pushed to the ground.[10] Although this allegedly occurred after the plaintiff was brought under control, the facts presented are not sufficient to show an Eighth Amendment violation. Absent from the plaintiff's evidence are facts showing that anything more than a minor amount of force was used, and there is no mention of injury resulting therefrom. Although the lack of serious injury does not preclude an Eighth Amendment claim, the extent of injury suffered is one factor to be considered in determining whether the use of force was wanton and unnecessary *Hudson*, supra. Consequently, *de minimis* uses of physical force do not implicate the Eighth Amendment's prohibition against cruel and unusual punishment.

> "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights. The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided the use of that force is not of a sort repugnant to the conscience of mankind." (internal quotation marks and parenthesis omitted).

*Hudson*, 503 U.S. at 9-10.

---

[10] Additionally, the affidavit of fellow inmate Willie Ricks states that the plaintiff was slapped, punched and kicked while he was in handcuffs. (Doc. #14, p. 4). Plaintiff says only that he was struck repeatedly with an open hand. As the court of appeals explained in *Evans v. Stephens* 407 F.3d 1272, 1278 (11th Cir. 2005), the court is required on summary judgment to credit the non-movant's version of disputed events, not some version of events taken from other witnesses that are incompatible with the non-moving plaintiff's version. "When the nonmovant has testified to events, we do not ... pick and choose bits from other witnesses' essentially incompatible accounts (in effect, declining to credit some of the nonmovant's own testimony) and then string together those portions of the record to form the story that we deem most helpful to the nonmovant."

In this instance, there is nothing before the court which shows that these alleged events rose to a level beyond mere *de minimis* uses of physical force. Minor amounts of force, even if applied unnecessarily, do not rise to the level of a constitutional claim. *See Johnson v. Moody*, 206 Fed. Appx. 880, 885 (11th Cir. 2006). This is especially true where the plaintiff can point to no injury.

Although in this instance there is a clear dispute between the parties as to whether the plaintiff was subjected to abusive actions after he was restrained, there does not exist a genuine issue of fact with regard to the pivotal issue of whether the plaintiff was injured thereby. Not even slight injury has been pleaded or proved. Taking all of plaintiff's allegations as true, he still has only established a *de minimis* use of force without injury after he was restrained, which does not offend the Eighth Amendment.

## CONCLUSION

For the reasons stated above, the defendant's motion for summary judgment is due to be GRANTED. By separate order, the court will DISMISS the action WITH PREJUDICE.

DONE this the 19th day of March 2012.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE